# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GLENDA RIVERA-NEGRON** | : | **CIVIL ACTION** |
| v. | : | NO. 12-3837 |
| **MICHAEL J. ASTRUE** | : | |

## MEMORANDUM OPINION

Savage, J.                                                                                                         October 30, 2013

In this appeal from a denial of Supplemental Security Income ("SSI") benefits, the plaintiff, Glenda Rivera-Negron, contends that the Administrative Law Judge ("ALJ") failed to comply with Social Security Ruling ("SSR") 00-4p because he did not inquire if there were any conflicts between the vocational expert's ("VE") testimony and the job descriptions contained in the *Dictionary of Occupational Titles* ("DOT") that required resolution.[1] The Commissioner of the Social Security Administration ("Commissioner") counters that there was no conflict between the VE's testimony and the DOT requiring clarification.

The record reveals that there were apparent conflicts between the DOT job requirements and the VE's testimony. Because the ALJ relied on the VE's testimony to determine that the claimant was not disabled without resolving the conflicts, we are unable to conclude that the ALJ's finding that there were jobs the claimant could perform was supported by substantial evidence. Therefore, we shall remand to the Commissioner.

---

[1] The plaintiff also argues that the ALJ's findings regarding her physical and mental impairments are not supported by substantial evidence. Specifically, she argues that the ALJ failed to consider material evidence from her treating therapist and discredited the opinion of the Social Security Administration's consulting physician without adequate explanation. Because our ruling on SSR-00-4p is dispositive, we shall not address these additional arguments.

**Background**

The claimant, a thirty-seven-year-old, non-English-speaking female, alleges that she has been unable to work since October 24, 2005 due to depression, anxiety, back pain, weakness in her hands, asthma, high blood pressure, insulin-dependent diabetes, Hepatitis C and Herpes Type II. She had previously worked as a personal attendant at the unskilled "light" work level. R. 48-49.

After a hearing at which the claimant was represented by a paralegal, the ALJ determined that she could not return to her past relevant work. Nevertheless, relying on the testimony of a vocational expert, the ALJ found that there were a significant number of other jobs in the national economy that the claimant could perform. R. 25. Accordingly, he concluded that the claimant was "not disabled."

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since September 5, 2008, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: major depressive disorder, asthma, and diabetes mellitus (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform sedentary and light, work as defined in 20 CFR 416.967(a) and 20 CFR 416.967(b), except the claimant can communicate in the Spanish language only. The claimant is limited to simple, repetitive tasks with little public interaction and no team work. Short periods of inattention can be made up by the end of the work shift or workday. The claimant must be permitted to work in a clean air environment.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on July 29, 1976. The claimant was 32 years old on the date the application was filed and is currently 34 years old (20 CFR

2

416.963). Both ages are defined as a younger individual.

7. The claimant is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since September 5, 2008, the date the application was protectively filed (20 CFR 416.920(g)).

R. 20-25.

## Standard of Review

A reviewing court is bound by an administrative law judge's findings if they are supported by substantial evidence in the record. *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The court has no fact-finding role in evaluating the administrative record and may not weigh the evidence or substitute its own conclusion for that of the ALJ. *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

## Discussion

Disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to demonstrate eligibility for disability benefits, the

claimant must demonstrate that she has not been involved in gainful activity and that she has a severe medical impairment which prevents her from performing past work or any other substantial gainful work which exists in the national economy. *Plummer*, 186 F.3d at 428; *see* 20 C.F.R. § 416.920.

A five-step sequential process governs the inquiry to determine whether a claimant is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). At step one, the claimant must demonstrate that she is not engaged in substantial gainful activity. *Plummer*, 186 F.3d at 428. At step two, she must show that she has a medically severe impairment or a combination of impairments. *Id.* At the third step, a determination is made whether the impairment is one of a number of listed impairments that the Commissioner has already decided are so severe that they conclusively render a claimant disabled.[2] *Id.* If the claimant's impairment equals at least one of the listed impairments, she is found disabled. *Id.* If it does not, the inquiry proceeds to step four where the claimant must show that the impairment prevents the performance of her past relevant work. *Id.* Once the claimant has established that she cannot return to her customary occupation, the burden shifts to the Commissioner, at the fifth step, to prove that the claimant can still engage in substantial gainful activity. *Id.* The Commissioner satisfies this burden by demonstrating that, given the claimant's age, education and work experience, she can perform specific jobs that exist in the national economy. *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984).

In order to determine whether there are specific jobs that a claimant can perform, the ALJ makes factual findings regarding age, education, prior work experience and

---

[2] *See* 20 C.F.R. pt. 404, subpt. P, app. 1 (listing the impairments).

residual functional capacity;[3] and then the ALJ generally consults the DOT, a United States Department of Labor publication that lists the requirements for thousands of jobs that exist in the national economy.[4] *Boone v. Barnhart*, 353 F.3d 203, 205-06 (3d Cir. 2003). The DOT is a presumptively authoritative source on the characteristics of jobs. *See Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001); *McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010) (referring to the DOT as "the Bible of vocational experts"). It is not the sole source for this type of information. The ALJ may solicit and rely upon the testimony of a vocational expert. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002). Nevertheless, if the VE's testimony regarding a job's demands differs from the DOT, the ALJ must provide a persuasive rationale supported by evidence to justify the departure. *See* SSR 00–4p; *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997).

SSR 00-4p[5] prescribes guidelines for addressing VE occupational testimony in connection with the information contained in the DOT at the fifth step of the disability inquiry.[6] The ruling provides in pertinent part:

> Occupational evidence provided by a [VE] generally should be consistent with the occupational information supplied by the DOT. When there is an *apparent unresolved conflict* between [VE] evidence and the DOT, the

---

[3] Residual functional capacity is the level of work a claimant can perform despite the limitations caused by her impairments. *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001).

[4] The "Social Security Administration has taken administrative notice of the reliability of job information contained in the [DOT]." *Burns v. Barnhart*, 312 F.3d 113, 126 (3d Cir. 2002) (citing 20 C.F.R. § 416.966(d)).

[5] *Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*, SSR 00-4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000). Social Security Rulings are published under the Commissioner's authority and are binding on the Social Security Administration. *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990).

[6] The DOT, with the companion publication Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), is the primary source of job requirements relied upon in making disability determinations. SSR 00-4p, 2000 WL 1898704 at *2.

5

adjudicator *must* elicit a reasonable explanation for the conflict before relying on the [VE] evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, *the adjudicator will inquire, on the record, as to whether or not there is such consistency*.

Neither the DOT nor the [VE] evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the [VE] is reasonable and provides a basis for relying on the [VE] testimony rather than on the DOT information.

. . .

The Responsibility To Ask About Conflicts

When a [VE] provides evidence about the requirements of a job or occupation, the adjudicator has an *affirmative responsibility* to ask about any possible conflict between that [VE] evidence and information provided in the DOT. In these situations, the adjudicator will:

Ask the [VE] if the evidence he or she has provided conflicts with information provided in the DOT; and

If the [VE's] evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

Explaining the Resolution

When vocational evidence provided by a [VE] is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the [VE] evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00–4p, 2000 WL 1898704, at *2, *4 (emphases added).

The regulation is clear. The ALJ must ask the VE if there is a conflict between his testimony and the DOT. When an apparent unresolved conflict arises, the ALJ must elicit a reasonable explanation for the VE's resolution of the conflict before relying on the VE's testimony to support a decision that the claimant is not disabled. SSR 00-4p,

6

2000 WL 1898704, at *4.  The ALJ must explain how the conflict was resolved.  *Burns*, 312 F.3d at 127.

The Third Circuit has interpreted SSR 00-4p narrowly, holding that the ALJ's affirmative duty to inquire about potential conflicts is only triggered when the VE provides evidence about the requirements of a job or occupation.  *Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005); see also *Jackson v. Barnhart*, 120 Fed. App'x. 904, 905-06 (3d Cir. 2004) (not precedential).[7]  Furthermore, the Third Circuit held that an unexplained inconsistency between the VE's testimony and the DOT is not *per se* fatal to the ALJ's determination so long as there is substantial evidence in the record to support the ALJ's finding.  *Rutherford*, 339 F.3d at 557 (internal citations omitted).

In determining whether the ALJ followed SSR 00-4p, we ask: (1) whether the VE testified about the requirements of a job or occupation that the claimant could perform; (2) whether the ALJ asked the VE if his or her testimony was consistent with the DOT; (3) if the ALJ did not, whether there was an actual conflict between the VE's testimony

---

[7] In *Williams v. Barnhart*, we interpreted SSR 00-4p as follows:

> The ruling imposes upon an ALJ an "affirmative responsibility" to identify and obtain a reasonable explanation of *any* conflicts between a VE's testimony regarding the requirements of a specific job and the information provided in the DOT . . . . The language of the ruling is mandatory, not discretionary. SSR 00–4p, 2000 WL 1898704, at *4.
>
> *When an apparent conflict arises*, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE's testimony to support a decision that the claimant is not disabled. *Id.* The explanation must be on the record and the ALJ must explain how the conflict was resolved. *Burns*, 312 F.3d at 127. However, an unexplained inconsistency between the VE's testimony and the DOT is not *per se* fatal to the ALJ's determination so long as substantial evidence exists in the record to support the ALJ's finding. *Rutherford*, 399 F.3d at 557 (internal citations omitted). Thus, despite an unresolved conflict, the ALJ's decision will be affirmed if there is substantial evidence to support it.

424 F. Supp. 2d. 796, 800 (E.D. Pa. 2006) (emphases added).

and the DOT. Obviously, if there was no conflict, the failure to ask the VE about consistency with the DOT would be harmless error.

In this case, the ALJ posed the following short-hand hypothetical to the VE: "sedentary, Spanish language only; simple, repetitive tasks; no public interaction; no teamwork; short periods of attention; can be made up by the end of the work day or work shift." R. 50. He then requested the VE to "give me what you have for sedentary and light for the two of them." R. 50. The VE opined that such a hypothetical individual at the sedentary level could perform the work of an inspector, examiner and checker, 750 of which jobs existed in the region and 200,000 nationally. R. 50. The VE then opined that at the light work level she could work as a housekeeper. The VE estimated that there are 4,000 housekeeper jobs regionally and 450,000 nationally. R. 51.

Rivera-Negron's representative asked the VE to include in the hypothetical that the claimant has to have a job with a sit/stand option, can only stand or walk for up to four hours in an eight-hour day, has restrictions on pushing, pulling, reaching, handling and feeling. The VE responded that an individual with those restrictions would not be able to work as a housekeeper, but could still work as an inspector, examiner and checker. R. 52-53.

Rivera-Negron's representative next asked the VE whether an individual who had some fingering limitations, specifically extending fourth and fifth fingers, would be precluded from performing inspector and examiner jobs. The VE explained that because those jobs require only gross movements, not fine movements, an individual with those limitations could still perform them. R. 53-54. In response to the ALJ's inquiry whether the individual would be precluded from performing the work of an

inspector, examiner and checker if she could only use her hands occasionally, the VE stated that such an individual could not do any kind of production work.

When she testified about the requirements of the jobs she believed Rivera-Negron could perform, the VE did not refer to the DOT. Nor did she identify the corresponding DOT job titles of the jobs she opined that Rivera-Negron could perform.

The ALJ did not ask the VE whether there was a conflict between her testimony and the DOT descriptions of the requirements of those positions.[8] In his decision, he stated that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." R. 25. Thus, without explanation or analysis, the ALJ concluded that there was no conflict between the VE's testimony and the DOT that needed to be resolved.

The ALJ's conclusion that there was no conflict was incorrect. On the contrary, there was a conflict between the VE's testimony and the DOT as to the language requirement.

The ALJ found that Rivera-Negron was functionally illiterate in English.[9] His hypothetical recognized that she spoke only Spanish. But, the DOT language

---

[8] Each DOT job description includes the general educational requirements ("GED") scales for reasoning, language, and mathematics. The GED scales are "aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, Appendix C, Section III.

The DOT defines GED as "education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college. However, it may be obtained from experience and self-study." DOT, Appendix C-Components of the Definition Trailer, 1991 WL 688702 (1991).

[9] During the administrative hearing, Rivera-Negron testified with the aid of a Spanish language interpreter. The ALJ made the finding that she "is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English." R. 24.

9

requirement for each of the jobs the VE opined Rivera-Negron could perform[10] is Level 1 Language Development. The Level 1 Language Development classification requires the ability to recognize the meaning of 2,500 two or three syllable words; read at a rate of 95 to 120 words per minute; compare similarities and differences between words and between series of numbers; print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses; and speak simple sentences using normal word order, and present and past tenses.[11] Thus, given that the ALJ determined that Rivera-Negron is illiterate and the VE testified that Rivera-Negron can perform the jobs which, according to the DOT, require a minimum level of proficiency in English, there is a conflict.

SSR 00-4p requires the ALJ to provide a reasonable explanation for accepting the VE's testimony over the DOT description when the two conflict. SSR 00-4p; *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). Here, the ALJ did not resolve the conflict. He did not explain why he concluded that Rivera-Negron, who did not speak English, could perform the jobs that the DOT described as requiring Level 1 Language Development. *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001). Without any explanation for why the ALJ credited the VE's testimony despite the conflict with the DOT, we cannot conclude that the ALJ's decision is supported by substantial evidence. Stated differently, there is a lack of substantial evidence to support the ALJ's

---

[10] The plaintiff cites the following examples, 323.687-014 Cleaner Housekeeping, 669.687-014 Dowel Inspector, 726.684-050 Film Touch-Up Inspector. Some other examples of the "inspector" and "examiner" positions include: 641.687-014 Box-Sealing Inspector, 739.687-102 Gasket Inspector, 789.687-078 Garment-Alteration Examiner (retail trade), 781.687-014 Cloth Examiner, Hand (textile), require a Level 1 Language Development. All have the 01 Language Development classification.

[11] DOT, Appendix C Section III General Educational Development.

finding that a Spanish-speaking only individual could perform the jobs identified by the VE, all of which have a Level 1 language requirement.

We do not doubt that there is a reasonable explanation. But, no matter how tempting, we are not free to presume what it is, no matter how obvious, or supply our own explanation. Rather, we are confined to the administrative record.

Applied literally, the DOT language requirement would render every non-English speaking individual *per se* disabled because every job described in the DOT requires an ability to communicate in English at various levels depending on the job. The DOT has no language level below Level 1. Consequently, with respect to claimants found to be illiterate, the DOT will always conflict with the VE's testimony. In those cases, SSR 00-4p imposes an affirmative duty on the ALJ to ask the VE how an illiterate person can perform the identified jobs. Making that inquiry will overcome the anomaly created by the DOT language requirements and will foreclose an argument that all illiterate people are *per se* disabled. Hence, the VE must explain how, despite the DOT language requirement, a non-English speaking individual can perform those jobs.

Even though it is apparent that a non-English-speaking individual can perform housekeeping or a similar unskilled job, there is nothing in the VE's testimony or the ALJ's decision stating that fact. Our review of the ALJ's decision is confined to the record upon which it was based. *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943); *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001). The district court cannot substitute its own judgment or analysis to save an inadequate determination. *Fargnoli*, 247 F.3d at 44 n.7. In short, the ALJ's decision must stand or fall on its own.

Had the VE been asked whether a conflict between her testimony and the DOT existed and then proceeded to identify the conflict, she likely could have explained that Rivera-Negron could perform the identified jobs despite her illiteracy in English. However, the VE was never asked and no explanation was provided. Accordingly, her testimony cannot support the finding that Rivera-Negron is not disabled.

**Conclusion**

The ALJ did not satisfy the requirements of SSR 00-4p. Therefore, we shall remand the matter for development of an adequate record addressing Rivera-Negron's inability to communicate in English and the effect of her limited English communication skills on her ability to perform the unskilled jobs identified as otherwise appropriate and available.[12]

---

[12] In light of our remanding this case because the ALJ did not comply with SSR 00-4p, we do not reach Rivera-Negron's arguments regarding the ALJ's consideration of the treating therapist's and the SSA's consulting physician's opinions. Consequently, we do not determine whether Rivera-Negron's arguments have merit.